JAMES C. NIELSEN (111889)
  *jnielsen@NKLLP.law*
DANIEL N. KATIBAH (293251)
  *dkatibah@NKLLP.law*
NIELSEN KATIBAH LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone:  (415) 693-0900
Facsimile:  (415) 693-9674

Attorneys for Plaintiff,
Associated Industries Insurance Company, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., | No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | (DEMAND FOR JURY TRIAL) |
| LISA BLOOM; THE BLOOM FIRM, | |
| Defendants. | |

Plaintiff Associated Industries Insurance Company, Inc. ("Associated") complains against Defendants, Lisa Bloom and The Bloom Firm, as follows:

## JURISDICTION AND VENUE

1.     The court has original jurisdiction over this action under 28 U.S.C. §1332 because it is a civil action between citizens of different states and the

amount in controversy, exclusive of interest and costs, exceeds $75,000.  The court further has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because plaintiff Associated seeks a judgment declaring that it owes no duties under its Lawyers' Professional Liability Insurance Policy to defend or indemnify either defendant in connection with the underlying lawsuit as alleged more fully below.

2.     Venue is proper in this court under 28 U.S.C. §1391(b)(1) and (2) because all defendants are residents of this district and because a substantial part of the events giving rise to the underlying claim occurred in this district.

## PARTIES

3.     Plaintiff Associated is an insurance company and a Florida corporation, with its principal place of business in New York, New York.

4.     Defendant Lisa Bloom, an individual, is and at all relevant times was a citizen of California.  Ms. Bloom is a licensed California lawyer and principal of The Bloom Firm.

5.     Defendant The Bloom Firm, is a California professional corporation with its principal place of business in Woodland Hills, Los Angeles, California.  The Bloom Firm is a law firm.  (Unless specified otherwise, "Bloom" refers collectively to both defendants Lisa Bloom and The Bloom Firm.)

## THE *MCGOWAN* LAWSUIT

6.     On October 23, 2019, Rose McGowan filed a lawsuit styled *Rose McGowan v. Harvey Weinstein, et al.*, in this U.S. District Court for the Central District of California, case no. 2:19-cv-9105 (the "*McGowan* lawsuit"), asserting eleven claims against Lisa Bloom, The Bloom Firm, Harvey Weinstein, David Boies, Boies Schiller Flexner LLP, and B.C. Strategies Ltd. d/b/a Black Cube, and seeking damages in excess of the federal jurisdictional limit

7.     Without admitting the truth of the allegations therein and solely for purposes of setting out the nature of its allegations, the 72-page *McGowan* complaint generally alleges that Bloom conspired with Harvey Weinstein and others to silence McGowan's allegations that Weinstein sexually assaulted her, to appropriate McGowan's unpublished book, to intimidate McGowan, to discredit McGowan and undermine her reputation, to damage McGowan's career, and to violate her privacy rights.  A true and correct copy of the *McGowan* complaint as tendered to Associated is attached hereto as **Exhibit A.**

8.     The *McGowan* complaint alleges that Bloom and others "participated in and supervised an unreasonably obtrusive investigation of MCGOWAN that violated her informational privacy and her autonomy privacy.  The investigation used sharp and illegal tactics like stalking MCGOWAN, illegally recording her, illegally downloading information from her computer, using operatives with fake identities to deceive her, and lying to her about Bloom's motives and concealing Bloom's representation of WEINSTEIN."  (See McGowan complaint at ¶ 187.)

9.     Specifically as to Bloom, McGowan alleges that Lisa Bloom "pitched her reputation-management services" to Weinstein, that Bloom "did not give or receive legal advice" to or from Weinstein, that Bloom was "retained to manage Weinstein's reputation," and that Bloom committed the alleged conspiratorial and tortious acts in their "non-legal roles" of "reputation management."  (See McGowan complaint at ¶¶ 14, 51.)

10.     Based on these allegations, the *McGowan* complaint asserts eleven claims against Bloom and others, including:  Civil RICO under 18 U.S.C. §1962(c); Civil RICO under 18 U.S.C. §1962(d); violation of Federal Wiretap Act, 18 U.S.C. §2520; fraudulent deceit prohibited by Cal. Civ. Code §1709; common law fraud; violation of the Bane Act, Cal. Civ. Code § 52.1; invasion of privacy, computer crimes, Cal. Civ. Code § 502(e)(1); conversion; intentional infliction of emotional distress; and negligent hiring and supervision.

11.     Articles in the press relating to the *McGowan* complaint confirmed by Bloom's counsel report that before the complaint was filed McGowan presented a multi-million dollar demand to, at a minimum, Weinstein based on the allegations later described in the *McGowan* complaint.

## THE ASSOCIATED POLICY

12.     Associated issued to The Bloom Firm as named insured a Lawyers' Professional Liability Insurance Policy, number AES1053102 01, effective for the policy period of May 19, 2019, to May 19, 2020, subject to a retroactive date of May 19, 2015.  Lisa Bloom qualifies as an insured.  The Associated policy affords professional liability coverage on a claims-made-and-reported basis, subject to limits of insurance of $1 million for each claim and $1 million in the aggregate, in excess of a self-insured retention of $25,000 for each claim.  The policy also affords Network Security and Privacy Coverage with separate each-claim and aggregate limits of $250,000.

13.     The Associated policy's insuring agreements provide, in relevant parts, as follows:

A.     The **Company** shall pay **Damages** and **Claim Expenses,** in excess of the Self-Insured Retention identified in the Declarations, if applicable, and subject to the Policy's Limit of Liability, that the **Insured** shall become legally obligated to pay as a result of a **Claim** made against the **Insured** for a **Wrongful Act**, provided that (i) the **Claim** is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Wrongful Act** prior to the Inception Date of this Policy; and (iii) such **Wrongful Act** took place on or after the **Retroactive**

1   **Date** set forth in the Declarations Page of this Policy and prior to

2   the end of the **Policy Period**.

3   B.   If Each Claim and Policy Period Aggregate limits have been

4   purchased for Network Security and Privacy coverage as

5   designated in the Declarations, the **Company** shall pay **Damages**

6   and **Claims Expenses** resulting from any **Claim** first made against

7   the **Insured** for a **Network Security Wrongful Act** or **Privacy**

8   **Wrongful Act**, provided that (i) the **Claim** is first made against the

9   **Insured** and reported to the Company, in writing, during the

10   **Policy Period** or the Extended Reporting Period, if applicable; (ii)

11   the **Insured** has no knowledge of such **Network Security**

12   **Wrongful Act** or **Privacy Wrongful Act p**rior to the Inception

13   Date of this Policy; and (iii) such **Network Security Wrongful**

14   **Act** or **Privacy Wrongful Act** took place on or after the

15   **Retroactive Date** set forth in the Declarations Page of this Policy

16   and prior to the end of the **Policy Period**.

17   C.   **Defense.** As part of and subject to the Policy's Limit of Liability,

18   the **Company** shall have the right and duty to defend any **Claim**

19   against the **Insured** to which this Policy applies, even if the

20   allegations of the **Claim** are groundless, false, or fraudulent.

21   However, the **Company's** duty to defend shall terminate upon

22   exhaustion of the applicable Limit of Liability by the payment of

23   **Damages** and/or **Claim Expenses.**

24

25   14.   The policy defines "Claim" in relevant part to mean "a written demand

26   received by the Insured for monetary Damages which alleges a Wrongful Act …."

27   15.   The policy defines "Wrongful Act" to mean "any actual or alleged

28   negligent act, error, or omission committed or attempted in the rendering or failing

to render Professional Services by any Insured on behalf of the Named Insured, including but not limited to Personal Injury."

16.     The policy defines "Personal Injury" to include "invasion, infringement, interference with the right to privacy or of publicity…."

17.     Of relevance here, the policy defines "Professional Services" to mean services "provided by any Insured to others as a lawyer…."

18.     As to coverage for network security and privacy, the policy defines "Network Security Wrongful Act" to mean any actual or alleged act, error, omission, neglect, or breach of duty by an Insured or the Insured's Service Provider, which causes a breach of the Insured's Network Security that results in, among other, "the theft, alteration, or destruction of electronic data on the Insured's Computer System."

19.     The policy defines "Privacy Wrongful Act" to mean any actual or alleged act, error, omission, neglect or breach of duty by an Insured that results in a Privacy Event.  "Privacy Event" refers to an unauthorized disclosure or loss of "Personal Information" in the care, custody or control of any Insured, or a violation of any "Privacy Regulation" as defined under the policy.

20.     Coverage under the Associated policy is subject to various policy exclusions that limit or preclude coverage for certain claims and damages, including without limitation as follows:

III.     **EXCLUSIONS**

This Policy shall not apply to any **Damages** or **Claims Expenses** incurred with respect to any **Claim:**

*          *          *

H.     based upon or arising out of any actual or alleged discrimination, humiliation or harassment, including but not limited to a **Claim** based on an individual's race, creed, color,

age, gender, national origin, religion, disability, marital status
or sexual preference; ….

21.     Defendants Bloom tendered their defense of the *McGowan* lawsuit to Associated.  Associated has disclaimed any duty to defend or indemnify Bloom under the policy.

22.     An actual controversy has arisen and now exists between Associated on the one hand, and Bloom, on the other hand, concerning the applicability of the Associated policy.  On one hand, Associated contends that it has no duty to defend or indemnify Bloom in connection with the *McGowan* lawsuit because (a) the *McGowan* lawsuit does not allege a claim against Bloom for negligent acts in Bloom's rendering of services to others as a lawyer, within the meaning of the policy's insuring agreement as set forth above, (b) the *McGowan* lawsuit does not allege a claim against Bloom for a "Network Security Wrongful Act" or "Privacy Wrongful Act" as defined by the policy, (c) the claims alleged against Bloom arose out of actual or alleged humiliation or harassment of McGowan for which coverage would be precluded under Exclusion H, (d) the claims alleged against Bloom assert a loss caused by the wilful acts of the insured for which coverage would be precluded under California's Insurance Code § 533 or policy Exclusion A; (e) to the extent that Bloom first received before the inception of the policy a written demand from McGowan for money alleging a negligent act, error, or omission in the rendering of services by Bloom, then Bloom would not satisfy condition A.(i) of the policy's insuring agreement; and/or (f) to the extent Bloom knew before the inception of the policy of a Wrongful Act, if any is alleged, then Bloom would not satisfy condition A.(ii) of the policy's insuring agreement.

23.     Associated is informed and believes that, on the other hand, Bloom, including each of Lisa Bloom and the Bloom firm, contend or will contend to the contrary of Associated's contentions set forth above.

24.    Given the controversy between Associated and Bloom, Associated requests that this court make and enter its binding judicial declarations in accordance with Associated's contentions set forth above.  The requested declarations are both necessary and proper at this time under the circumstances in that the interests of judicial economy and substantial justice will be served thereby.

WHEREFORE, Associated prays for judgment as follows:

a.    That the court make and enter a binding judicial declaration in accordance with Associated's contentions set forth above;

b.    That Associated be awarded its costs of suit incurred herein; and

c.    For such other and further relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Associated Industries Insurance Company, Inc. demands a jury trial as provided by Fed. R. Civ. P. 38(a).

December 9, 2019                    NIELSEN KATIBAH LLP

By: _/s/   Daniel N. Katibah_____.
Daniel N. Katibah
Attorneys for Plaintiff Associated Industries
Ins. Co., Inc.